If it pleases the Court, good morning. My name is Richard Cornell. I represent the appellant Dirk Strater. In reading this cold record, I would like to think that any reasonable jury of 12 would have concluded that the government's activities in this case constituted a substantial and unacceptable risk that an otherwise law-abiding citizen would have committed this offense, and they would have acquitted. This jury, of course, did not do that, and the question is why not? I would submit to you two insights for you, not necessarily related to the facts of the entrapment issues, as to why they didn't. Number one, the jury was given a jury instruction on an entrapment, and it was a correct instruction. However, counsel defended the case on two theories, and the one that he really honed in on was an honest, reasonable mistake of fact on Mr. Strater's part. What that did was it enabled the government to hone in and the jury to hone in on the actual literal words that Mr. Strater used in the Internet chat, rather than the bigger question of what did the government do to induce those words. The second issue is, well, and why not, I think goes directly to the second trial error issue that we've alleged, and that is this. In the case of Norris and Musladeen, we submit the appellant's presumption of innocence was eroded when the jury suddenly saw a huge group of 17-year-olds in the courtroom during the most critical portion of the government's case-in-chief, and as it turned out, the trial court didn't do anything to correct the prejudice. Now, I understand the response, which is that the government – excuse me, the trial judge proposed an instruction, but I see three problems there. First is the problem that trial counsel brought out. In bringing on that kind of a limiting instruction, it really has the extreme danger of saying pay no attention to that blue elephant in the living room. And there is case law, certainly, that would support situations where that type of instruction won't work. A, quote, "...curative instruction was offered and refused." Right. Now, the second point. The defense – did you try the case? No. I'm appellate counsel. Did the trial counsel propose an alternate instruction? No. Trial counsel's position was there was simply no instruction that could be given that would cure the problem. The second problem is that the instruction that the court proposed read as follows, and I'm reading from page 24 of the excerpt. The jury observed a considerable group of high school students come into the courtroom just before we recessed this morning. The students were on a tour of the courthouse and were here very briefly to observe the trial. The students were all seniors in high school. That says nothing about the presumption of innocence. That says nothing about you do not – the presumption of innocence is attending right now and it doesn't get removed until you're delivered. It – in fact, in effect, this instruction basically says there was a blue elephant in the living room. The third – Well, the problem with this – well, if you want something about – in the instruction that wasn't there, then you can ask for it. But apparently the conclusion of trial counsel was that really it's better just to drop the whole thing. He didn't drop the motion for misfire. I mean, no, I – if he couldn't get the minister out. Right. The third problem is, is that based on the case law that we – Can I ask what you would have done if the district judge told the high school students that they were barred from the court? What – And let's take it up to where we got some case law. Supposing he tells the press you're barred from the court. It's a public trial. Anybody can walk in. Certainly. But if he – in fact, the trial judge excused this group of high school students and didn't tell the jury why he was doing that. The jury had every reason to believe that they were there on the support of the government, which they weren't. It was an unfortunate mistake, if you will, an innocent thing. The court had invited the high school senior class from a local high school to the court and had thought that, wait a minute, this isn't the right trial to have a bunch of high school seniors watching. If there's a case where there's dead people involved and the dead people's relatives, all right, are sitting in the courtroom, that, I could understand, would incite a jury to, you know, perhaps something wrong. But they're not. They're permitted to stay there. Sure. This is a case about internet luring of a teenager where there's no child ever involved. Having a group of teenagers there, I submit, brings it right back to the square. These are the body of people that we're really protecting, even though this case doesn't have anybody in it really who looks like this. Now, the third problem, I submit, is that what should have happened in this case is that the jury actually should have been canvassed. Or, in that case, if the trial counsel said, no, I don't want you to do that either, then fine, you've withdrawn your motion for mistrial. But that didn't happen either. And when you take all of that out of the mix and you look at the facts in the light most favorable to the government, here's what's left and here's what really bothers me about this case. First off, the situs of this crime, where the words my client uttered were uttered, was an adult romance chat room. In which the person on the other end of the line told your client that she was 15 years old. Not quite 15 years old. Correct. And your client's explanation for that was, I thought she was kidding. I really didn't think she was 14 or 15 years old. I thought she was older than that. And the jury heard both. Sure. And concluded that, as they're entitled to, to believe the government's side of the case and not the defendant's. True. If this is the type of sting operation that the Court will tolerate, then all of that is true. And that's where I'm going. Is this the type of sting operation that the Court should tolerate in trying to ferret out child molesters? I have no problem with sting operations ferreting out child molesters. But it seems to me that where these should happen are on websites or chat rooms that are devoted to children or to child pornography. When the government chooses to go on an adult romance chat room, what are they doing? They're going after people in the first place who go there with a reasonable expectation that they're talking to an adult to begin with. If there was evidence in this record that child molesters regularly frequent adult romance chat rooms looking for children who have gotten on there contrary to the rules of yahoo.com, that would be one thing. There is no such evidence in this record. Basically, the government went on an adult romance chat room looking for suckers, if you will, and they found one in Mr. Strader. And the bigger question I have is, should that be permitted? And particularly on an adult romance chat room, because as is in the record, people on adult romance chat rooms fantasize all the time. They pretend to be somebody they're not. The second problem that I have is that before she makes the comment about I'm 14, almost 15, what is her handle? Marissa St. Pub, 18. Why not pick a different handle? What handle does that suggest? It suggests that she really is 18. Thirdly, now I hope you've taken a look at this. This is Government's Exhibit 3 at trial. It's in the supplemental record at page 26. Before there's any mention about 14, almost 15, the government downloads and forwards an old photograph to Mr. Strader. Mr. Strader and his friend who was looking over his shoulder both thought that the photo was not of somebody who was a teenager. Now, obviously, as an advocate, I'm going to say what I'm going to say, but as objectively as I can say so, in looking at page 26 of the supplemental excerpt of record, I agree. That does not necessarily look like somebody who's a teenager. And it seems to me that if the government is going to be able to do these things, they should at least have a photograph of somebody that clearly looks underage. When they send this with a Marisa St. Pub 18 in adult romance chat room, what they are doing is they're creating a great amount of confusion, child or adult. The fourth problem that bothers me about this is it's the government who injects the underage talk, and they do that at the point when the talk is becoming intimate in a realm of fantasy. It isn't Mr. Strader saying, are you underage? It's the government saying that at the point when they're talking intimately. The fifth thing that bothers me about this is the language and the phraseology and the syntax that's being used. It's not the kind of stuff that teenagers use these days. We have the agent talking about playing Monopoly. We have the agent talking about the Boston Strangler. We have the agent giving specific street directions to Mr. Strader from North Lake Tahoe to a shopping center in Sparks. Teenagers, people who don't drive, don't normally do that sort of things. It creates ambiguity and confusion, not in the mind of Mr. Strader, but I submit in the mind of any reasonable person who would be there looking at this. And then finally, maybe not finally, but the thing that really bothers me... I hope it's finally because you're out of time, but go ahead and wrap up. Okay. The thing that really bothers me about this is the decoy is a platinum blonde who's 26 years old, who doesn't look anything like an adult. Mr. Strader never said anything about her being 14. Said, are you the one in the picture? Yes, I am. Let's go. Boom. He's arrested. And now he's looking at five years mandatory minimum in prison. And finally, there's no history of this man being a child molester. He has no criminal history. They have no knowledge that he's involved in child crimes. There's no evidence of predisposition in that sense to get involved with children sexually. Basically, what happened here was the police went on an adult romance chat room looking for a sucker, and they found one. And I believe the court should intervene. I think this is the wrong kind of sting operation to go after child molesters. Thank you. Thank you for your argument. We'll hear from the government at this time. Mr. Gifford. May it please the Court. My name is Robert Don Gifford, and I'm Assistant U.S. Attorney for the District of Nevada. And I'm actually arguing this case on behalf of Mr. Craig Denny, who wrote the brief and tried this case. One of the things I do want to point out to the case is that the picture that he referred to is an actual picture of a 14-year-old. The picture that was sent to the defendant was a 14-year-old. He informed, or the officer informed the defendant in the chat room that she was not yet 15. The, as far as any predisposition, there was no discussion of sex by law enforcement. He initiated it immediately. Are you sexual? When the officer informs the person I'm almost 15, then it keeps going. Are you a virgin? What have you done? Would you like to try it with me? He initiates all of that. She did not induce him into anything. In fact, the defendant, I believe, conceded in his reply brief that there was no, I guess, egregious inducement by the government. As far as the high school kids coming into the courtroom during the proceeding, they were there only for a short amount of time. It was an open courtroom. The defendant never moved to seal the courtroom. These high school students were seniors in high school, not younger kids. They were not government supporters. They were not wearing buttons. They did not have pictures on their shirt. They were not a part of a political group or an interest group with a cause. Some of the examples that were given in the cases were the mothers against drunk driving were serving refreshments outside in the hallway of a courtroom. None of that is prevalent in this case. Shouldn't the trial court have told the jury at minimum that the presence of these not related to either side and should have no impact on their deliberations in this case? I believe the court offered that opportunity by asking, would you like a limiting instruction? The language I just gave you is not in what was proposed, right? Correct. Correct. That's not what was proposed. But there was no offering. Here's some different language, Judge, that I would suggest you tell the jurors. As both the defense counsel at trial and the appellate counsel have pointed out, they're arguing, hey, Judge, you can't unring that bell. There's a blue elephant in the courtroom. Basically, by asking the court to canvas a jury, you're asking to invade their province. You're asking for that blue elephant to come back in the courtroom and do a tap dance in front of them, basically further highlighting it and emphasizing any sort of basically creating further error. In this case, the high school students came in, sat briefly, counsel made their objections off to the side. Jury was excused. They asked for what the remedy would be. Defense counsel wants mistrial. How about an instruction? No, you're only going to emphasize the fact, tells the students to go ahead and leave. Jurors are called back in. And no one is to the wiser. So if there is any, I guess, prejudice, it would be extremely small. And I think if you were to canvas a juror one by one, not only would you be invading their province, you'd be emphasizing that we just had a bunch of high school students that came in here. In this case, these are high school seniors just doing a tour of the courthouse, not even there as a support group or an interest group. Also, just to jump back as far as the age, I mentioned that the photograph that was emailed or sent through the chat was an actual 14-year-old. One of the defendant's comments towards the end was he told the defendant, you know, what do you want me to wear? Why don't you fix up your hair and try to look older? There was concern about that. He also emphasized the sexual conduct all the way through from top to bottom. It was not the government's actions. It was not the government inducement. Anything that was done is what Pullman talked about. Had the government had responded enthusiastically, that would have been proper. In this case, the government didn't even respond enthusiastically. In fact, the conversations in the chat room that are attached to the record are somewhat pacified. But regardless, the defendant was the aggressor. Of course, I believe it's mentioned in here, he drove from Truckee, California down to Reno. That's a 45-minute drive. It was 10 o'clock. He's there at 11 o'clock. By 11 o'clock, not only did he make it on time, he's got a motel room ready and he's got three condoms with him. So as far as, you know, time is obviously of the essence for this individual who is obviously motivated to meet this person who he believed to be less than 15. Okay. I don't see any other questions. Mr. McLeod, apart from your argument, these were local police that were controlling the internet. How does it, how do you decide, how do they decide whether this winds up in federal? The prosecution system is part of a task force that includes both cooperation between the Washoe County Sheriff's Office and the FBI. The person who's actually working the computer is a sheriff's deputy. The picture of the photograph comes from a sheriff's deputy, but the cooperation is through the FBI. And basically, they present the cases through the FBI for both offices at the same time and through the DA's office and the U.S. Attorney's Office. They coordinate as to which cases should be presented federally or state. Okay. There's also one other thing I wanted to bring up before I sat down. It was pointed out that the screen name of the alleged 14-year-old was St. Pub 18. That is something that usually an individual doesn't have control over. For example, if I want to buy something on eBay and I want to choose my name, I give them my option and usually they assign me a name. For example, I want to be Bobby Don. But they're going to say, you're going to be Bobby Don 52. So really, a screen name really is something that can be assigned to you. Secondly, going into an adult chat room... Is this what you just described in the record? Excuse me? No, Your Honor. That was never really argued or ever presented as an issue, especially as far as what an age can be. Secondly, any argument saying, hey, the police need to be going to the Disney chat rooms and things like that to protect those children. The children that also have to be concerned about are the same children or the same age that are trying to sneak into the bars and the clubs. And they get in and they deserve to be protected as well as far as their age from statutorily rape and things of that nature. In this case, here's someone who sent their 14 getting into an adult chat room, just as somebody who is 19 trying to get into a bar. They both deserve the protections or excuse me, I guess, 14 getting into a bar. They were able to get in basically by lying, whether it be checking a box saying I'm an adult over 18 or by showing a false ID card at a bar. In this case, we have basically an unsupervised person on a computer with no adult or no bouncer at the door looking at an ID and making a judgment call. We have basically someone by themselves to click a box saying I'm over 18. So just by the fact that we can't ask law enforcement to focus on go to the Disney chat rooms, they need to go to the places where teenagers are often likely to go. They want to go where the adults are, where the adults have the money, the jobs, can take them snowboarding at Lake Tahoe, as was this individual in this case. I think I understand your argument and your point. Case to start will be submitted for decision. We'll proceed to the last case on the calendar, which is the United States v. Zislovich.
judges: Canby, Hawkins, Duffy (S. Ny)